IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

David Haupricht,                                        Case No. 3:08CV2961

        Plaintiff,

v.                                                      ORDER

Carol Contrada, et al.,

        Defendants.

This is a civil rights case arising from an incident on December 2, 2006. Plaintiff David Haupricht claims that defendants violated his rights under the United States Constitution, the Ohio Constitution, and Ohio tort law by: 1) falsely arresting him; 2) illegally entering on his premises; 3) defaming him; and 4) negligently discharging their tasers. Defendants deny that they violated Haupricht's rights.

Pending are defendants' motions for summary judgment [Docs. 11, 17, 19]. For the reasons that follow, defendants' motions shall be granted.

**Background**

The facts in this case are not in dispute.[1] On December 2, 2006, Fulton County Deputy Sheriff Rick Brock observed Haupricht driving sixty-seven miles per hour in a thirty-five mile per hour zone. Deputy Brock activated his siren and began to pursue.

---

[1] In a Fulton County, Ohio court proceeding, Haupricht pled no contest and was found guilty of speeding and failure to comply with the lawful order of a police officer. As part of the plea, plaintiff stipulated to a set of facts.

Haupricht pulled into his driveway, got out of his car and tossed his keys on the hood. He looked at Deputy Brock and began to walk away. Deputy Brock ordered Haupricht to stop; he also told him he was under arrest for speeding and attempting to flee.

As Deputy Brock tried to handcuff Haupricht, Haupricht pulled away. Deputy Brock instructed him to put his hands on the hood of the police cruiser, but Haupricht refused. Haupricht told Deputy Brock to "go f--k himself because he did nothing wrong." [Doc. 19-1].

Deputy Brock warned Haupricht that if he did not comply with the order, he would be forced to use his taser. Haupricht responded that he did not "give a shit." *Id.* Haupricht then pointed to his forehead and told Deputy Brock "to go ahead and shoot him right in the head." *Id.*

Deputy Brock again told Haupricht he was under arrest. Haupricht replied "he didn't think so" and put his hands in his pants pockets. *Id.* Deputy Brock told Haupricht to remove his hands from his pockets. Haupricht refused and told Deputy Brock to "shoot him." *Id.*

In the meantime, Village of Swanton police officer James Piotrowski and Sylvania Township police officer Vanderhorst had arrived.

Haupricht removed his hands from his pants pockets and reached into his coat pockets. Deputy Brock again ordered Haupricht to remove his hands from his pockets. Haupricht remained noncompliant. He again told Deputy Brock "to shoot him or tase him." *Id.* Deputy Brock unholstered his taser and tased Haupricht.

Though it initially appeared as if Haupricht was falling to the ground, he instead began to run between the police cars. Officer Piotrowski ran alongside Haupricht and knocked him to the ground.

2

Haupricht still had not complied with Deputy Brock's order to "put his hand out." *Id.* Deputy Brock applied another burst of the taser. Haupricht then complied Deputy Brock's orders and Officers Piotrowski and Vanderhorst were able to handcuff him.

Haupricht originally filed this suit in the Lucas County, Ohio, Court of Common Pleas, claiming the officers entered onto his property and arrested him without lawful cause, used excessive force and made defamatory statements. On December 19, 2008, defendants removed the suit to this court.

## Standard of Review

A party is entitled to summary judgment on motion under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

In deciding a motion for summary judgment, a court accepts the opponent's evidence as true and construes all evidence in the opponent's favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of a material fact. *Celotex*, *supra*, 477 U.S. at 323.

## Discussion

## I. Constitutional Claims[2]

### A. False Arrest

Haupricht argues the police officers did not have probable cause to arrest him. Defendants argue that collateral estoppel bars Haupricht's false arrest claim.

In determining whether collateral estoppel bars federal litigation of Haupricht's false arrest claim, I apply Ohio law. *Migra v. Warren City Sch. Dist. Bd. Of Educ.*, 465 U.S. 75, 81 (1984) (noting that "[i]t is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered.").

In Ohio, collateral estoppel applies "when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action." *Thompson v. Wing*, 70 Ohio St. 3d 176, 183 (1994).

Haupricht's no contest pleas to the charges of speeding and failure to comply with the lawful order of a police officer were an implicit admission that the officers had probable cause to arrest him. *See, e.g.*, *Daubenmire v. City of Columbus*, 507 F.3d 383, 390 (6th Cir. 2007) ("Plaintiffs are estopped by their pleas in state court from now challenging the reasonableness of their arrest in the instant § 1983 action."); *Walker v. Schaeffer*, 854 F.2d 138, 142 (6th Cir. 1988) (holding that no

---

[2] Under *Pearson v. Callahan*, — U.S. —, —, 129 S. Ct. 808, 818 (2009), I have discretion either to consider simply the issue of qualified immunity, without reaching the underlying constitutional issues, or first to address those issues and then, if necessary, determine whether defendants enjoy immunity. In this case, I need not reach the question of qualified immunity.

contest pleas, finding of guilt, and imposition of fines "estop plaintiffs from now asserting in federal court that the defendant police officers acted without probable cause").

Haupricht and his attorney also stipulated to the truthfulness of facts read into evidence from the officer's report of the incident. These facts include that Haupricht was driving sixty-seven miles per hour in a thirty-five mile-per-hour zone.

The Supreme Court has held: "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). The fact that the officers only had probable cause to believe Haupricht was speeding is, thus, immaterial.

Haupricht pled no-contest. He does not claim he was not speeding. He is, thus, estopped from now asserting that defendants arrested him without probable cause. *See Daubenmire, supra*, 507 F.3d at 390; *Walker,* supra, 854 F.2d at 142. Defendants are, therefore, entitled to summary judgment on plaintiff's false arrest claim.

### B. Illegal Entry on Premises

Haupricht claims defendants entered his property unlawfully. Defendants assert that they have not violated Haupricht's clearly established Fourth Amendment rights.

The United States Supreme Court has held, without distinguishing between felony and misdemeanor suspects, that police officers engaged in hot pursuit may follow a suspect into a private residence to complete an arrest begun in a public place. *U.S. v. Santana*, 427 U.S. 38, 42-43 (1976). The Court reasoned that "a suspect may not defeat an arrest which has been set in motion in a public

5

place, and is therefore proper under *Watson*, by the expedient of escaping to a private place." *Id.* at 44 (citing *U. S. v. Watson*, 423 U.S. 411 (1976)).

Applying *Santana*, the Ohio Supreme Court held that police officers who identified themselves and were in hot pursuit of a defendant who fled into a house to avoid arrest for misdemeanor traffic offenses, could enter defendant's house without a warrant to effectuate the arrest. *Middletown v. Flinchum*, 95 Ohio St. 3d 43, 45 (2002).

In the present case, the police officers observed Haupricht speeding. They activated their sirens but Haupricht continued traveling at a high rate of speed. The officers never entered Haupricht's home, but rather simply followed him into his driveway and arrested him.

Assuming, *arguendo*, that a driveway is a protected area,[3] Haupricht could not escape an arrest which had begun upon a public roadway by fleeing police into his driveway. *Santana, supra*, 427 U.S. at 44. I therefore find defendants were justified in entering Haupricht's driveway without a warrant under the Fourth Amendment and are therefore entitled to summary judgment regarding Haupricht's illegal entry claim.

### C. Excessive Force

Haupricht argues that defendants violated his Fourth Amendment rights by tasing and otherwise physically assaulting him. Haupricht and his attorney stipulated to the truthfulness of facts

---

[3] It is questionable whether Haupricht's driveway is a protected area under the Fourth Amendment. *Compare Knott v. Sullivan*, 418 F.3d 561, 573 (6th Cir. 2005) (finding enforcement officers' warrantless entry onto homeowner's driveway did not violate homeowner's Fourth Amendment rights, for purpose of homeowner's § 1983 action), *with U.S. v. Smith*, 783 F.2d 648, 653 (6th Cir. 1986) (finding whether a driveway is protected from entry by police officers depends on circumstances and the fact that driveway is within curtilage of house is not determinative, if its accessibility and visibility from public highway rule out any reasonable expectation of privacy).

read into evidence from Deputy Brock's report. Those facts include two tasings. I view these tasings as the basis for plaintiff's excessive force claim.

I analyze claims of excessive force arising during the course of an arrest under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Tennessee v. Garner*, 471 U.S. 1, 7-22 (1985). I judge the "reasonableness" of a use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham, supra,* 490 U.S. at 396. To determine whether the force used to effectuate a seizure was "reasonable" under the Fourth Amendment, I must balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interest' against the countervailing governmental interests at stake." *Graham*, *supra*, 490 U.S. at 396 (quoting *Garner, supra*, 471 U.S. at 8)(quoting *U.S. v. Place*, 462 U.S. 696, 703 (1983))).

Use of a taser constitutes non-lethal force. *See Roberts v. Manigold*, 240 F. App'x 675, 678, n.4 (6th Cir. 2007) (unpublished disposition); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1045-46 (6th Cir. 1992). Nonetheless, "the type of weapon used is not the issue; the excessiveness of the force is the Fourth Amendment inquiry." *Roberts, supra,* 240 F. App'x at 678. Thus, an officer's gratuitous or excessive use of a taser violates a clearly established constitutional right. *Landis v. Baker*, 297 Fed. App'x 453, 463 (6th Cir. 2008).

To determine the reasonableness of the use of force, I must consider the totality of the circumstances, judged "from the perspective of a reasonable officer on the scene." *Graham, supra*, 490 U.S. at 394. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving about the amount of force necessary in a particular situation." *Id*. I therefore

7

examine the totality of the circumstances, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting or attempting to evade arrest by flight." *Id*.

### 1. Severity of the Crime

Haupricht was suspected of speeding and DUI. These are non-violent offenses and "relatively speaking,[] not particularly serious crimes." *Harris v. City of Circleville*, 583 F.3d 356, 366 (6th Cir. 2009).

### 2. Whether Suspect Posed a Threat to the Officers or Others

Haupricht refused to be handcuffed and disregarded the officers' commands including orders to remove and keep his hands from his pockets. His refusal to remove and keep his hands from his pockets posed significant potential risk to the police officers. *See Tallman v. Elizabethtown Police Dept.,* 167 F. App'x. 459, 466 (6th Cir. 2006) (unpublished disposition) (finding drawing of firearms reasonable because "it was unclear whether or not plaintiff posed an immediate threat to Officer's safety because Officer could not see plaintiff's hands and, therefore, could not determine whether or not plaintiff was armed).

Haupricht could have been hiding a weapon in his pocket. He repeatedly defied Deputy Brock's orders to remove his hands from his pockets. In the face of this conduct, Deputy Brock could reasonably apprehend a risk of danger to himself and the other officers. Not being favored with x-ray vision, the Deputy could only act on what he could see, and his apprehensions about what might be in plaintiff's hands as they were in his pockets.

Even after Deputy Brock first tased Haupricht and Officer Piotrowski knocked him to the ground, Haupricht refused to put out his hands. The first tasing did not eliminate the officer's

reasonable apprehension of possible danger. A reasonable officer in Deputy Brock's position could have believed the second use of his taser was necessary to protect his safety and that of his fellow officers against a resistant, noncompliant and potentially armed plaintiff.

Most simply put, the law does not put an officer in Deputy Brock's situation to the test of either refraining from acting and risking injury or acting and risking litigation.

### 3. Whether Plaintiff Actively Resisted Arrest or Attempted to Evade Arrest by Flight

The officers argue that Haupricht actively resisted arrest by refusing to be handcuffed and disobeying their orders. They argue that Haupricht further resisted arrest by shouting profanities at them and his resistance necessitated use of the taser.

Though I would characterize Haupricht's resistance activities as generally passive, rather than active, *see Shreve v. Jessamine County Fiscal Ct.*, 453 F.3d 681, 687 (6th Cir. 2006), I cannot overlook the fact that a reasonable officer could conclude that Haupricht's refusal to remove his hands from his pockets, in conjunction with his other passive resistance, constituted an immediate threat to the safety of the officers or others. Therefore, I grant defendants' motion for summary judgment on this claim.

### D. Municipal Liability

Haupricht's complaint includes a municipal liability claim. Defendants move for summary judgment on this claim. Because Haupricht's brief does not respond to the defendants' arguments defendants are entitled to summary judgment on plaintiff's municipal liability claim.

### II. State Law Claims

9

### A. Defamation

Haupricht alleges that defendants "made false allegations to third persons" including "falsely accusing Plaintiff of committing acts of violence" and falsely stating that he had resisted arrest, "engaged in disruptive conduct," and was driving under the influence of alcohol. [Doc. 1-1].

The statute of limitations for libel or slander is one year. O.R.C. § 2305.11(A). The statute of limitations for libel begins to accrue at publication. *Palmer v. Westmeyer*, 48 Ohio App. 3d 296, 302 (1988). For slander, the statute of limitations begins to run at the moment the words are spoken. *Rainey v. Shaffer*, 8 Ohio App.3d 262,301 ( 1983). The statute accrues whether the plaintiff had knowledge or not. *Id*.

I find that the alleged defamatory communication was made sometime between December 2 and 4, 2006. Consequently, plaintiff needed to file his complaint by December 3, 2007, at the latest. Because Plaintiff filed his complaint on December 2, 2008, plaintiff's defamation claim is time-barred, and thus dismissed.

### B. Negligence

Haupricht alleges that defendant officers negligently physically assaulted him. Defendants argue that as political subdivisions and employees they are protected by statutory immunity.

Ohio Revised Code § 2744.02(A)(1) provides "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." except as stated in subsection (B). None of the exceptions specified in O.R.C. § 2744.02(B) apply to this case.

Similarly, O.R.C. § 2744.03(A)(6) provides immunity for employees of political subdivisions, including police officers. The immunity exists unless (a) "[the employee's] acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;" (b) "[the employee's] acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;" or (c) "[l]iability is expressly imposed upon the employee by a section of the Revised Code." O.R.C. § 2744.03(A)(6).

Haupricht does not allege the officers in this case acted outside the scope of their employment and official responsibilities as political subdivision employees at the time of the traffic stop and subsequent arrest. Additionally, Haupricht does not allege that liability is expressly imposed by a statute. The individual defendants are therefore entitled to immunity unless their acts "were with malicious purpose, in bad faith, or in a wanton or reckless manner."

Haupricht has failed to produce evidence sufficient to create a genuine issue of material fact as to whether any defendant acted maliciously, in bad faith, or in a wanton or reckless manner. Unsupported speculation cannot overcome a motion for summary judgment.

For these reasons, I find all defendants are immune from Haupricht's negligence claim under O.R.C. §§ 2744.02(A)(1) or 2744.03(A)(6). I therefore grant defendants' motions for summary judgment on this claim.

### III. Misidentification of Defendant Telb

Defendant Telb alleges that "as there is no claim against the Defendant Lucas County Sheriff James Telb, summary judgment must be granted as a matter of law." [Doc. 19].

The facts Haupricht and his attorney stipulated to before the Fulton County Court included the responding agencies and identities of the officers present at the scene. The Lucas County

Sheriff's Department was not identified as a responding agency. Summary judgment must be granted as a matter of law, therefore, on all of Haupricht's claims against Defendant Lucas County Sheriff James Telb.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT defendants' motions for summary judgment [Docs. 11, 17, 19] be, and the same hereby are granted.

So ordered.

s/James G. Carr  
James G. Carr  
Chief Judge